UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KAREN B. BAKER,

    Plaintiff,

v.                              CASE No. 8:08-CV-59-T-TGW

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.
_____

## ORDER

The plaintiff in this case seeks judicial review of the denial of her claims for Social Security disability benefits and supplemental security income payments.* Because the decision of the Commissioner of Social Security is supported by substantial evidence and does not contain reversible error, the decision will be affirmed.

I.

The plaintiff, who was forty-five years old at the time of the hearing and who has an eleventh grade education, has worked as a tele-

---

*The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 14).

marketer and a housekeeper (Tr. 47, 307). She filed claims for Social Security disability benefits and supplemental security income payments, alleging that she became disabled due to pain in her back and neck (Tr. 46). The claims were denied initially and upon reconsideration.

The plaintiff, at her request, then received a de novo hearing before an administrative law judge. The law judge found that the plaintiff had severe impairments of cervical and lumbar degenerative disc disease with neck and lower back pain, and obesity (Tr. 16). The law judge found that the plaintiff can lift and carry twenty-five pounds and sit for an unlimited amount of time (Tr. 18). He decided she is able to stand and walk for more than two, but less than six, hours per day (id.). He therefore concluded that the plaintiff's impairments restricted her to sedentary work (Tr. 18), but did not prevent her from returning to prior employment as a telemarketer (Tr. 19). The law judge therefore decided that the plaintiff was not disabled. The Appeals Council let that decision stand as the final decision of the Commissioner.

## II.

In order to be entitled to Social Security disability benefits and supplemental security income, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment," under the terms of the Social Security Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 423(d)(3), 1382c(a)(3)(D). The Act provides further that a claimant is not disabled if she is capable of performing her previous work. 42 U.S.C. 423(d)(2)(A), 1382c(a)(3)(B).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305

U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper

legal standards were applied and legal requirements were met. Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

III.

The plaintiff challenges the law judge's decision on several grounds. The plaintiff argues first that the law judge failed to find that the following three impairments were severe: carpal tunnel syndrome; cervical radiculopathy with neck pain; and lumbar radiculopathy (Doc. 15, pp. 3-7).

With respect to her carpal tunnel syndrome, the plaintiff contends the record does not support the law judge's conclusion that the plaintiff's carpal tunnel syndrome was a nonsevere impairment. The Eleventh Circuit has said that "[a]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984).

On this issue, the plaintiff relies primarily on the opinions of treating physician Dr. Lalitha E. Jacob and examining physician Dr. H.D. Wassel (Doc. 15, pp. 3-4). In July 2006, Dr. Jacob diagnosed the plaintiff

with "[b]ilateral mild to moderate carpal tunnel syndrome with predominant demyelinating changes" (Tr. 225). The doctor suggested a wrist brace to help with the symptoms related to her carpal tunnel syndrome (id.). Dr. Wassel, a one-time examining orthopedist, rendered the following findings regarding the plaintiff's wrists: "Positive Tinel's, some atrophy of thenar muscles. Grip strength in the right hand grade III, left hand grade IV. Fine and gross dexterity is impaired. She has difficulty picking up buttons, pins and coins" (Tr. 252).

The law judge also received testimony at the hearing from a medical expert, Dr. John W. Axline, an orthopedic surgeon. Dr. Axline testified that he had examined the plaintiff's medical records (Tr. 330). Dr. Axline acknowledged that Dr. Jacob had diagnosed bilateral mild to moderate carpal tunnel syndrome (Tr. 343). He testified that he had reviewed the EMG notes (Tr. 350) and that the record shows that the plaintiff "has a right carpal tunnel syndrome, which is characterized as mild" (Tr. 344). On cross-examination by plaintiff's counsel concerning Dr. Jacob's opinion that the plaintiff had bilateral carpal tunnel syndrome, Dr. Axline said that he "thought the carpal tunnel syndrome was definitely on the right side only"

(Tr. 350). Significantly, plaintiff's counsel did not cross-examine Dr. Axline about his characterization of the right carpal tunnel syndrome as "mild."

The law judge, in finding that the plaintiff's carpal tunnel syndrome was non-severe, concluded (Tr. 17):

> The claimant underwent EMG testing in March 2006. Dr. Jacob reviewed the results and opined that the claimant had mild bilateral carpal tunnel syndrome. Her examination in July 2006 showed no significant findings related to the claimant's wrists (Exhibit 12F). Dr. Axline reviewed the results and opined that the claimant had mild carpal tunnel syndrome only on the right side. Dr. Wassel's examination showed multiple findings related to carpal tunnel syndrome. Again, however, Dr. Axline stated that Dr. Wassel's examination is completely inconsistent with the other evidence of record. There is no credible evidence that the claimant's carpal tunnel syndrome creates more than minimal limitations on her ability to function.

The plaintiff asserts, correctly, that Dr. Jacob opined "mild to moderate CTS," not simply mild carpal tunnel syndrome, as the law judge misstated in his opinion (see Tr. 225, 229). However, any error in this regard is harmless.

The law judge gave the greatest weight to the opinion of Dr. Axline (Tr. 19), who, as indicated, testified that the plaintiff "has a right carpal tunnel syndrome, which is characterized as mild" (Tr. 344). The law judge explained that he gave the greatest weight to Dr. Axline's opinion because he is an orthopedic surgeon (Tr. 19), "is an impartial, qualified medical expert and he reviewed the entire evidence of record prior to stating his opinion" (id.).

Law judges may ask for, and consider, opinions from medical experts on the nature and severity of a claimant's impairments. 20 C.F.R. 404.1527(f)(2)(iii), 416.927(f)(2)(iii). Importantly, the plaintiff does not develop any argument that the opinion of a testifying medical expert should be treated the same as the opinion of a state agency nonexamining reviewing physician, which cannot, standing alone, amount to substantial evidence. See Broughton v. Heckler, 776 F.2d 960 (11th Cir. 1985). Regardless, any such contention would be unpersuasive.

Here, the law judge was faced with unclear evidence concerning the nature of the plaintiff's impairments. Accordingly, he called upon a medical expert to assist him in understanding the evidence and resolving the

conflict. Unlike state agency reviewers, Dr. Axline gave his opinions under oath and subject to cross-examination. Also, unlike state agency reviewers, who typically render their opinions early in the administrative process without the benefit of all the medical records, Dr. Axline had the benefit of review of the medical evidence of record. Most significantly, unlike state agency reviewers, who render conclusory opinions that are sometimes accompanied by semi-comprehensible scrawled comments, Dr. Axline explained the reasons for his opinion in detail (Tr. 329-51).

In this situation, the law judge, having heard the testimony and being aware that Dr. Axline had not examined the plaintiff, could reasonably find the testimony persuasive and give it great weight. A ruling that he could not do that would seriously intrude upon the law judge's role as a fact-finder and would significantly diminish the utility of calling a medical doctor as an expert witness to assist in the resolution of difficult cases. Accordingly, the law judge could properly base his decision regarding the plaintiff's carpal tunnel syndrome upon Dr. Axline's testimony.

It is not enough to argue, as the plaintiff does, that the evidence would support a finding that the impairment was severe. Adefemi v.

Ashcroft, supra, 386 F.3d at 1027. Rather, the plaintiff must show that the evidence compels a contrary conclusion. Significantly, in this case, neither Dr. Jacob, nor any other doctor, opined that the plaintiff has a specific functional limitation due to carpal tunnel syndrome. It is the functional limitations from an impairment, and not the diagnosis of an impairment, that is determinative in an evaluation of disability. See McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986). Consequently, since there is no evidence that compels the conclusion that, because of carpal tunnel syndrome, the plaintiff had a significant functional limitation, the law judge did not err in finding that the plaintiff, who has the burden of proof, failed to show that her carpal tunnel syndrome was a severe impairment.

The plaintiff contends, further, that the law judge did not discuss evidence of cervical radiculopathy in the upper extremities and lumbar radiculopathy in the lower extremities. This contention is meritless because the law judge referred to this evidence. Thus, the law judge noted that "Dr. Jacob reviewed EMG testing performed in March 2006 and stated that it showed ... bilateral mild subacute and chronic C7 radiculopathy, and bilateral mild subacute L5-S1 radiculopathy" (Tr. 17).

Significantly, what Dr. Jacob reported was "mild subacute" radiculopathy. The plaintiff has not shown that such radiculopathy placed limits on the plaintiff in addition to what the law judge found. In this respect, what matters is not the disorder the plaintiff is diagnosed to have, but the functional limitations resulting from the disorder. Davis v. Barnhart, 2005 WL 2510227 at *3 (11th Cir. 2005)(unpub. dec.) ("Disability is determined by the effect an impairment has on the claimant's ability to work, rather than the diagnosis of an impairment itself."). Notably, Dr. Jacob did not opine any functional limitations resulting from the plaintiff's radiculopathy (Tr. 221-22, 225-26).

The plaintiff also challenges the law judge's assessment of medical opinions. She contends, in this respect, that the law judge did not properly evaluate Dr. Jacob's opinions regarding radiculopathy (Doc. 15, pp. 8-9). However, as just explained, the law judge did consider those conditions. Moreover, those conditions were not significant, but were mild and subacute. And, as stated, Dr. Jacob did not opine any functional limitations from those conditions. Consequently, the plaintiff has not

demonstrated that the law judge erred in his assessment of Dr. Jacob's report of radiculopathy.

The plaintiff also asserts that the law judge did not properly assess the opinions of Dr. Robert P. Nantais, who, like Dr. Jacob, was a treating physician (id., pp. 9-10). Opinions from treating physicians are entitled to substantial or considerable weight unless there is good cause for not according them such weight. Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004). Good cause exists when the treating physician's opinion is not bolstered by the evidence, the evidence supports a contrary finding, or the opinion is conclusory or inconsistent with the physician's own medical records. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

The law judge appropriately evaluated the records from Dr. Nantais. Thus, the law judge wrote (Tr. 19):

> Dr. Nantais stated the claimant should stay out of work (Exhibit 1F). The undersigned gives little weight to this opinion. Dr. Nantais' opinion is not supported by his treatment notes. His examinations showed that the claimant had some tenderness over the lumbar spine, but there were few other significant findings. On the date that Dr. Nantais offered the opinion, the examination of the claimant was entirely within normal limits. Dr.

> Nantais did not offer any detailed limitations and[/]or any specific reasons why the claimant would not be able to work.

This explanation provided good cause for discounting the opinion from Dr. Nantais. In particular, the law judge was certainly correct to say that on the date Dr. Nantais stated his opinion the plaintiff's examination "was entirely within normal limits" (see Tr. 131).

Moreover, from all that appears, Dr. Nantais saw the plaintiff only until the Spring of 2003 (Tr. 131). He kept the plaintiff off work at times in three-week intervals pending reevaluation, but he never opined that she was disabled or would be disabled for more than one year (Tr. 131, 134, 140, 156). On January 27, 2003, Dr. Nantais recommended a referral to a neurosurgeon and kept her off work pending that evaluation (Tr. 139). By February 18, 2003, the doctor noted that the plaintiff had not yet gone to see a neurosurgeon because "[s]he had talked to her attorney who indicated that they are looking for their own neurosurgeon," and he again kept her off work pending that evaluation (Tr. 134). On March 11, 2003, he reported the plaintiff's examination was within normal limits (Tr. 131). Under these

circumstances, the law judge could reasonably discount the temporary limitations on work imposed by Dr. Nantais.

The plaintiff also complains of the law judge's assessment of the opinion of Dr. Wassel, an orthopedist (Doc. 15, pp. 10-12). Dr. Wassel was not a treating physician, but rather examined the plaintiff at her counsel's request (Tr. 250-53). Accordingly, Dr. Wassel's opinion is not entitled to the weight ordinarily accorded the opinion of a treating physician.

The law judge assessed Dr. Wassel's opinion as follows (Tr. 19):

> Dr. Wassel opined that the claimant was not capable of even sedentary type work. He stated she could not lift/carry more than five pounds or stand, sit or walk more than one hour without interruption (Exhibit 14F). The undersigned gives little weight to this opinion. After reviewing the entire record, Dr. Axline opined that the claimant could lift up to twenty-five pounds. He persuasively stated that a lifting limit of five pounds was not supported by the evidence. Dr. Axline further testified that the record did not support any limitations on the claimant's ability to sit. He stated, and the undersigned agrees, that Dr. Wassel's examination and opinion were inconsistent with the other evidence of record.

This explanation is reasonable and supported by the evidence. A review of the entire record reflects that Dr. Wassel's opinion is clearly out

of line with the other evidence. For example, Dr. Wassel states that, "[f]or the past three to four months, [the plaintiff] has [had] grand mal seizures" and that she has "suicidal thoughts" (Tr. 250). There is no mention of those conditions anywhere else in the medical records. These statements indicate that Dr. Wassel was accepting, very uncritically, the plaintiff's assertions of her symptoms. In all events, the law judge has adequately explained his reasons for discounting Dr. Wassel's opinion.

The plaintiff contends, in addition, that the law judge erred in his assessment of the plaintiff's credibility (Doc. 15, pp. 13-14). This argument lacks merit.

The Eleventh Circuit has articulated a standard for assessing allegations of pain and other subjective complaints. As the court of appeals explained in Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986), the pain standard "required evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." If the law judge concludes that there is an objectively

determined medical condition which could reasonably be expected to produce disabling pain, the law judge "must evaluate the credibility of claimant's testimony as to pain, and must express a reasonable basis for rejecting such testimony." Hand v. Heckler, 761 F.2d 1545, 1549 n.6 (11th Cir. 1985).

The law judge acknowledged the pertinent standards for assessing the plaintiff's credibility (Tr. 18). See Wilson v. Barnhart, 284 F.3d 1219, 1225-26 (11th Cir. 2002). Moreover, he explained his credibility determination as follows (Tr. 18-19):

> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.
>
> The claimant testified that she experiences pain in her neck, back, and hands. She stated she is unable to bend, lift, or hold objects in her hands. She said that she can sit no more than fifteen to twenty minutes and walk no more than five minutes. But she testified that she does housework, laundry, cooking and the dishes. She baby-sits in her home for friends and family, including an 18 month old child for whom she changes diapers. She walks to the store about a block away....

> While the evidence shows that the claimant has severe impairments that are capable of creating significant limitations on her ability to function, it does not support the severe functional allegations the claimant describes. Dr. Axline testified that the record did not indicate any limitations on sitting, standing, or walking. He added that the evidence supported a lifting limitation of twenty-five pounds. There is no evidence to support the claimant's allegations that she can lift only minimal weight, sit no more than fifteen to twenty minutes, and walk no more than five minutes. Again, physical examination findings were generally within normal limits except for some tenderness and slightly decreased range of motion over the cervical and lumbar spines. For the foregoing reasons, the undersigned finds the claimant is not fully credible and is capable of doing more than she alleges.

This explanation is reasonable and adequate.

Moreover, the Commissioner adds that the plaintiff lives with her 96-year old grandmother and that, together, they take care of her eight-year old cousin (Doc. 16, p. 15). He also points out that the plaintiff states she can sit for only one hour before lying down and cannot lift a gallon of milk, but testified that she baby-sits an eighteen-month old child, changes his diapers, and watches him play (id.).

Notably, the law judge did not totally reject the plaintiff's subjective complaints (Tr. 18-19). Rather, he concluded that they limit her to sedentary work (Tr. 18). He only rejected the plaintiff's allegation that her subjective complaints rendered her totally disabled (Tr. 19). The law judge adequately and reasonably explained that determination (Tr. 18-19). The evidence clearly does not compel the contrary conclusion.

The plaintiff contends, finally, that the law judge erred in his assessment of the plaintiff's residual functional capacity because he did not include any postural limitations. This contention is predicated upon Dr. Axline's testimony (Doc. 15, p. 14). In response to the question from plaintiff's attorney, "Now how about other limitations like stooping, crawling, knee bending," Dr. Axline stated (Tr. 346-47):

> A Well, some of those things would be limited by her weight just because if [sic] your thighs, and I don't know what she looks like. But if your thigh is large it might be they would weigh 250, 244, or 240, or if your abdomen is large, there is a mechanical impingement if you try to flex your hips beyond a certain amount. And they did describe her knee range motion as 125, and normally it is 135, and that sort of limitation could well be due to the mass of her tissues themselves. The muscles and fat tissues prevent a joint which

> would otherwise have more motion in moving beyond a certain point because of the bulk of the tissues.
>
> Q Okay.
>
> A So that would be the only thing I can conceive as based on her testimony in the record.

Dr. Axline, thus, did not testify that the plaintiff would have limitations regarding stooping, crawling, or knee bending. Rather, he simply said that there could be such limitations, but indicated that, since he did not know what the plaintiff looks like, it was just a conceivable circumstance. Accordingly, the law judge implicitly concluded that there were no postural limitations. The evidence plainly does not compel the contrary conclusion.

Furthermore, even if the law judge erred in failing to find postural limitations, that error would be harmless. The law judge found that the plaintiff could perform past work as a telemarketer. The plaintiff did not testify that limitations regarding stooping, crawling, or knee bending would prevent her from working as a telemarketer (Tr. 317-18, 323-24). It was, of course, the plaintiff's burden to prove that she could not return to past work as a result of her impairments. Doughty v. Apfel, 245 F.3d 1274, 1278 (11th

Cir. 2001). The plaintiff has clearly failed to carry that burden. Consequently, even if the law judge had erred with respect to postural limitations – and it does not appear that he did – that error would not warrant reversal.

It is, therefore, upon consideration

ORDERED:

That the decision of the Commissioner of Social Security is hereby AFFIRMED. The Clerk shall enter judgment in accordance with this Order and CLOSE this case.

DONE and ORDERED at Tampa, Florida, this 23rd day of February, 2009.

*[signature]*

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE